No. 2--97--1217

October 16, 1998

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

CATERPILLAR, INC., ) Appeal from the Circuit

) Court of Kendall County.

Plaintiff-Appellant, )

)

) No. 96--MR--32

)

LYNN DOHERTY, Director of the )

Department of Employment Security; )

THE BOARD OF REVIEW OF THE )

DEPARTMENT OF EMPLOYMENT SECURITY; )

and BRUCE HARTZELL, ) Honorable

) Thomas E. Hogan,

Defendants-Appellees. ) Judge, Presiding.

_________________________________________________________________

JUSTICE RAPP delivered the opinion of the court:

Defendant-Claimant, Bruce Hartzell (Hartzell), filed a claim for unemployment benefits with The Department of Employment Security (Department).  Plaintiff-employer, Caterpillar, Inc. (Caterpillar), protested the claim.  A claims adjudicator determined Hartzell was eligible for unemployment benefits.  Caterpillar appealed the claims adjudicator’s determination.  A Department referee conducted a hearing and determined Hartzell was eligible for unemployment benefits.  Caterpillar appealed the referee’s decision to the Board of Review of The Department of Employment Security (Board of Review).  The Board of Review affirmed the decision of the hearing referee.  Caterpillar sought administrative review.  The circuit court of Kendall County affirmed the decision of the Board of Review.  Caterpillar appealed.  We affirm.

Caterpillar discharged Hartzell from employment on September 27, 1994, alleging he violated the rules of conduct for striking employees by threatening a nonstriking worker.  Hartzell denied the allegations but admitted a brief name-calling match with the nonstriking worker.  At the time of his discharge, Hartzell, a member of the International Union of United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), was participating in a strike against Caterpillar.  The strike began on June 20, 1994, and continued to December 1995.

Hartzell filed a claim for unemployment benefits with the Department on September 3, 1995.  Caterpillar protested the claim in a letter to the Department dated September 14, 1995, claiming Hartzell was ineligible for benefits because he was "on strike."  A Department claims adjudicator rejected Caterpillar’s protest and determined Hartzell was eligible for benefits commencing on September 3, 1995.  Caterpillar appealed the claims adjudicator’s determination.

On May 2, 1996, a Department referee conducted a hearing on Caterpillar’s appeal.  Caterpillar argued that the hearing referee lacked jurisdiction and that the appeal should have been considered instead by the Director of the Department of Employment Security (Director) because Hartzell’s unemployment resulted from a labor dispute.  Caterpillar also argued that Hartzell’s claim for unemployment benefits was untimely because it was filed almost a year after his discharge.  Caterpillar’s primary witness, Stephen Fuller (Fuller), and Hartzell offered conflicting testimony regarding the September 19, 1994, incident.

Fuller testified that as he, his wife, his son, and a co-

worker were leaving the Caterpillar plant, Hartzell followed them in a truck.  Fuller further testified that Hartzell called him a "scab," cursed at him, made threats, and tried to run him off the road.

Hartzell testified that Fuller was in a car next to his truck while they were stopped at a red light.  Hartzell testified that Fuller initiated a verbal exchange by inviting Hartzell to call him a "scab."  Hartzell admitted calling Fuller a "f---ing scab."  Hartzell denied threatening Fuller or any of his passengers, and denied trying to run Fuller off the road.

On May 7, 1996, the hearing referee issued a decision affirming the claims adjudicator’s determination that Hartzell was eligible for unemployment benefits.  The referee held that he had the authority to consider Caterpillar’s appeal and that section 604 of the Unemployment Insurance Act (Act) (820 ILCS 405/604 (West 1992)), which disqualifies participants in a labor dispute from receiving benefits, did not apply. 

The referee found that Hartzell was not discharged for misconduct as defined in section 602 of the Act (820 ILCS 405/602 (West 1992)).  Specifically, the referee found that Caterpillar failed to demonstrate "by a fair preponderance of the evidence that the claimant engaged in 'intimidation, coercion, physical violence or a threat thereof’ as proscribed in the rules."  The referee found that Caterpillar failed to establish that it or any of its employees had suffered any harm.  The referee further found that Caterpillar did not issue prior warning or explicit instruction regarding the conduct to Hartzell.

Caterpillar appealed the referee’s decision to the Board of Review.  Caterpillar stated it was appealing (1) the referee’s ruling that Hartzell was not discharged for misconduct as defined in section 602 of the Act; and (2) the referee’s ruling that section 604 of the Act was inapplicable.  Caterpillar also argued that the referee lacked jurisdiction because a claim involving eligibility under section 604 of the Act should have been considered by the Director or her representative.

However, in its two briefs filed with the Board of Review, Caterpillar did not argue that the referee lacked jurisdiction or that Hartzell filed his claim for benefits untimely.  On October 30, 1996, after reviewing the record, including the transcript of testimony submitted at the hearing before the referee, the Board of Review affirmed the decision of the referee.

Caterpillar filed a complaint for administrative review of the Board of Review’s decision in the circuit court of Kendall County.  Caterpillar argued that the Board of Review erred when it ruled Hartzell was not disqualified from receiving benefits because of misconduct or because he was unemployed due to a labor dispute.  Caterpillar also argued that Hartzell’s claim was untimely filed and that Caterpillar’s administrative appeals should have been considered by the Director or her representative.  On October 30, 1997, the circuit court affirmed the decision of the Board of Review and entered final judgment for defendants and against Caterpillar.  Caterpillar timely appealed.

Caterpillar raises the following issues on appeal: (1) whether the evidence before the Board of Review established that Hartzell was eligible for unemployment benefits despite his participation in a labor dispute during the period for which benefits were claimed; (2) whether the Department followed the proper procedure in Caterpillar’s appeal of the administrative claims adjudication; and (3) whether the claimant filed a timely claim.

Caterpillar first argues that the Board of Review erred in its decision that the evidence established the claimant was improperly discharged.  Caterpillar argues that the Board of Review’s failure to find the claimant ineligible for benefits under section 604 of the Act was against the manifest weight of the evidence and a misinterpretation of the law.

The Unemployment Insurance Act (820 ILCS 405/100 
et seq.
 (West 1992)), was enacted to provide support to unemployed workers and their families during periods of involuntarily unemployment.  See 
American Steel Foundries v. Gordon
, 404 Ill. 174, 181 (1949).  An unemployed individual may receive benefits if the eligibility requirements of section 500 of the Act (820 ILCS 405/500 (West 1992)) are met and the individual is not subject to any of the specified exemptions.

Caterpillar argues that Hartzell should be disqualified under section 604 of the Act because he was involved in a labor dispute at the time he was discharged from employment.  This is a case of first impression in Illinois.  We are aware of no prior cases addressing the application of section 604 to an employee discharged from employment during a labor dispute.

Section 604, commonly referred to as the "labor dispute disqualification" section, provides in pertinent part:

"Labor Dispute.  An individual shall be ineligible for benefits for any week with respect to which it is found that his 
total or partial unemployment is due to a stoppage of work which exists because of a labor dispute
 at the factory, establishment, or other premises at which he is or was last employed." (Emphasis added.)  820 ILCS 405/604 (West 1992).

The principles of statutory construction are well established, as the supreme court observed in 
Bridgestone/Firestone, Inc. v. Aldridge
, 179 Ill. 2d 141 (1997): 

" 'It is a primary rule in the interpretation and construction of statutes that the intention of the legislature should be ascertained and given effect.  [Citations.]  This is to be done primarily from a consideration of the legislative language itself, which affords the best means of its exposition, and if the legislative intent can be ascertained therefrom it must prevail and will be given effect without resorting to other aids for construction.  [Citations.]  There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports.' [Citation.]"  
Bridgestone/Firestone
, 179 Ill. 2d at 149, quoting 
Illinois Power Co. v. Mahin
, 72 Ill. 2d 189, 194 (1978).

The supreme court in 
Bridgestone/Firestone
 further noted:

" '
Where the language of the act is certain and unambiguous the only legitimate function of the courts is to enforce the law as enacted by the legislature.  [Citations.]  It is never proper for a court to depart from plain language by reading into a statute exceptions, limitations or conditions which conflict with the clearly expressed legislative intent. [Citations.]' [Citation.]"  
Bridgestone/Firestone
, 179 Ill. 2d at 149, quoting
 
Harvey Firemen’s Ass’n v. City of Harvey
, 75 Ill. 2d 358, 363 (1979).

The plain language of section 604 requires an individual’s unemployment be "
due to
 a stoppage of work which exists because of a labor dispute."  (Emphasis added.)  820 ILCS 405/604 (West 1992).
 The determination of the cause of Hartzell’s unemployment is a factual question.  However, the applicability of section 604 of the Act "involves a conclusion derived from a consideration of all of the evidentiary facts, in connection with the application of principles of law to a consideration of the evidence and becomes a mixed question of law and fact" (
Fransen Construction Co. v. Industrial Comm’n
, 384 Ill. 616, 624 (1943)).

We will first address the factual question.  We have a highly circumscribed role when reviewing an administrative appeal of a circuit court order affirming the Board of Review.  An administrative agency's factual findings are "held to be 
prima facie
 true and correct."  
(Emphasis added.)  735 ILCS 5/3-110 (West 1992).  We are, therefore, limited to determining whether the factual findings are against the manifest weight of the evidence.  
La Salle Partners, Inc. v. Illinois Property Tax Appeal Board
, 269 Ill. App. 3d 621, 632 (1995).  Factual findings of the Board of Review are against the manifest weight of the evidence only where all reasonable and unbiased persons would agree it is clearly evident the Board of Review erred and should have reached the opposite conclusion.  
La Salle Partners, Inc.
, 269 Ill. App. 3d at 632.  In making this determination, we may not reevaluate the credibility of witnesses who testified before the Board of Review, or substitute our judgment for that of the Board of Review.  See 
Trayling v. Board of Fire & Police Commissioners of the Village of Bensenville
, 273 Ill. App. 3d 1, 9 (1995).  The agency’s decision should be affirmed if the record contains evidence supporting the decision.  
Abrahamson
, 153 Ill. 2d at 88.

The Board of Review determines the facts and issues in each appeal as the ultimate fact finder, taking the referee’s findings into consideration.  
Lachenmyer v. Didrickson
, 263 Ill. App. 3d 382, 386-387 (1994).  Accordingly, it is the responsibility of the administrative agency to weigh the evidence, determine the credibility of witnesses and resolve conflicts in testimony.  
Nichols v. Department of Employment Security
, 218 Ill. App. 3d 803, 809 (1991).

Here, the Board of Review reviewed the record of evidence, including the transcript of testimony submitted at hearing before the referee. The Board of Review determined that Hartzell was discharged for allegedly threatening and harassing a nonstriking employee.  Based on the evidence and testimony presented at the hearing before the referee, the Board of Review found the nonstriking employee’s testimony to be less credible than Hartzell’s and ruled that there was no misconduct by Hartzell.

Having reviewed the record in this case, and deferring to the Board of Review’s assessment of the credibility of the witnesses based on the facts presented in the record, we find that the Board of Review’s conclusion that Hartzell’s unemployment was due to discharge by Caterpillar was not against the manifest weight of the evidence.  

Whether section 604 of the Act applies in this case is a question of law which we must decide 
de novo
. 
Bailey & Associates, Inc. v. Department of Employment Security
, 289 Ill. App. 3d 310, 316 (1997).   Although the court is not formally bound by an agency’s interpretation of law, it should accord substantial weight and deference to an agency’s interpretation of a statute which it administers and enforces.  
Farmers State Bank v. Department of Employment Security
, 216 Ill. App. 3d 633, 640 (1991).

In this case, the Board of Review determined that section 604 did not operate to bar Hartzell from benefits.  The Board of Review  previously interpreted the applicability of section 604 in a similar case.  See 
Smith v. Caterpillar, Inc.
, Dep't of Employment Sec. Bd. Op. 
ABR--95--10545 (March 13, 1996). In 
Smith
, the claimant was terminated by Caterpillar for alleged reckless conduct while on the picket line.  The Board of Review concluded that section 604 has no application to a terminated employee, stating:

"While it is true that at the time of the incidents *** the claimant was not in employment and was an unemployed individual *** there was an expectation of future employment once the labor dispute ended.  The employer’s actions in ending this expectation constitutes [
sic
] a discharge.  We therefore[] hold that for unemployment insurance purposes an employee can be discharged during the existence of a labor dispute.  Once the employee is discharged he or she is no longer disqualified for benefits under Section 604 since the claimant is no longer unemployed because of a labor dispute."  
Smith
, Dep't of Employment Sec. Bd. Op. 
ABR--95--10545 at 2.

While we are not bound by the Board of Review’s interpretation of the applicability of section 604, we find its reasoning persuasive, and we accord substantial weight and deference to its interpretation of section 604, which it has the responsibility of administering and enforcing.  See 
Farmers State Bank
, 216 Ill. App. 3d at 640.

The courts in our sister states have reached the same result in interpreting provisions similar to section 604.  See 
Federico v. Brannan Sand & Gravel Co.
, 788 P.2d 1268 (Colo. 1990) (holding that claimant’s unemployment was no longer due to a labor dispute where the employer-employee relationship has been terminated by discharge);  
Marathon Electric Manufacturing Corp. v. Industrial Comm'n
, 269 Wis. 394, 69 N.W.2d 573 (1955) (finding that a striking worker who is discharged during a strike is eligible for unemployment benefits).

Section 604 of the Act operates to disqualify an employee from receiving unemployment benefits when the employee is voluntarily unemployed because of a labor dispute at the place where he or she was last employed.  Section 604 " 'evinces the legislative determination that the State is to remain neutral in labor disputes and collective bargaining, rendering assistance to neither the employer nor labor.' "  
Bridgestone/Firestone
, 179 Ill. 2d at 156, quoting 
Local 7-641 v. Department of Labor
, 96 Ill. 2d 94, 98 (1983).

The neutrality policy does not apply when unemployment is the result of discharge, rather than the result of a labor dispute.  See 
Bridgestone/Firestone
, 179 Ill. 2d at 156.  When an employer elects to discharge an individual during a labor dispute, thereby terminating the employment of the individual, the reason for the neutrality policy disappears.  An employee who is discharged by the employer before the end of a labor dispute is denied the opportunity to cross the picket line and return to work. 

Therefore, we hold section 604 is applicable only to those individuals whose unemployment is due to a stoppage of work that exists because of a labor dispute.  Section 604 of the Act is inapplicable when an employer terminates an employee involved in a labor dispute, even though the labor dispute continues.
  Hartzell’s claim for unemployment benefits arose only after his separation from service for alleged misconduct.  Accordingly, section 604 does not operate to disqualify Hartzell from receiving benefits under the Act.

Caterpillar next argues that the Department failed to follow the proper procedure in hearing its appeals.  Caterpillar argues that the hearing referee improperly asserted jurisdiction over the appeal concerning section 604 and that its appeal should have been considered by the Director or her representative.

Section 800 of the Act requires that "[w]henever a 'determination' of a claims adjudicator involves a decision as to eligibility under Section 604, appeals shall be taken to the Director or his representative designated for such purpose."  820 ILCS 405/800 (West 1992); see also 
Owens-Illinois, Inc. v. Bowling
, 95 Ill. 2d 397, 402 (1983). 

Section 604 was implicated in this case prior to the hearing by the referee.  Notice was given to the Department by Caterpillar. In a letter to the Department dated September 14, 1995, Caterpillar claimed Hartzell was ineligible for benefits pursuant to section 604.  The appeal was then heard by a referee rather than by the Director or her representative.  Caterpillar correctly states that the Department did not follow proper procedure in this case.  Although proper procedure was not followed, we find that any procedural error was harmless because we determined section 604 is inapplicable to Hartzell’s claim.  A remand would result in the same determination regarding the application of section 604.  See, 
e.g.
, 
People v. Cedeno
, 263 Ill. App. 3d 257, 262 (1994) (holding that an alleged error is harmless if the reviewing court determines that a trial without the alleged error would produce the same result).

Additionally, we note that Caterpillar failed to raise this issue in its briefs before the Board of Review.  Issues or defenses not raised before the administrative agency will not be considered for the first time on administrative review. See 735 ILCS 5/3--110 (West 1994); 
Texaco-Cities Service Pipeline Co. v. McGaw
, 182 Ill. 2d 262, 278 (1998).  Our supreme court in 
Texaco-Cities
 recognized that "waiver is an admonition to the parties rather than a limitation on [the] court’s jurisdiction, and that it may be relaxed in order to maintain a uniform body of precedent, or where the interests of justice so require."  
Texaco-Cities
, 182 Ill. 2d at 279.  We find that this is not such a case.  Regardless of whether we deem the procedural issue waived, we find that any procedural error was harmless.

Caterpillar also challenges the timeliness of Hartzell’s application for unemployment benefits.  Caterpillar discharged Hartzell on September 27, 1994.  Hartzell filed a claim for unemployment benefits approximately one year later, on September 3, 1995.  Caterpillar argues Hartzell was required to file an initial claim for benefits within one week of his discharge, pursuant to section 2720.105 of the Administrative Code.  See 56 Ill. Adm. Code, §2720.105(a) (1987).  Section 2720.105(a) states:

     "An initial claim for benefits should be filed no later than the end of the first week in which the claimant is separated from work.  If it is filed later than the week the claimant became separated from work and backdating is not requested, the claim shall begin in the week in which it was filed."  56 Ill. Adm. Code, §2720.105(a).

Section 2720.105(b) of the Administrative Code provides that "[i]f an initial claim is filed later than the end of the first week after the separation, but less than one year thereafter," the claimant may request that the Agency backdate the claim upon a showing of extenuating circumstances, as provided in the Code.  See 56 Ill. Adm. Code, §2720.105(b).

We believe Caterpillar’s reading of the regulation is incorrect.  We accord substantial weight and deference to the agency’s interpretation of its regulations.  See 
Farmers State Bank
, 216 Ill. App. 3d at 640.  Hartzell filed his claim for benefits within one year of his separation from employment.  The regulation does not disqualify Hartzell from benefits.  Rather, absent extenuating circumstances, it limits him to benefits beginning in the week his claim was filed.  Hartzell claimed benefits on September 3, 1995, and was awarded benefits commencing on September 3, 1995.  According to the Director, Hartzell’s award of benefits was proper under the Code.  We agree with the Director that Hartzell’s claim for benefits was timely and his award of benefits was proper under the Code.

For the foregoing reasons, we affirm the judgment of the circuit court of Kendall County.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.