2021 IL App (1st) 191889-U

No. 1-19-1889

Order filed September 8, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| GLORIA PALACIOS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | |
| THE DEPARTMENT OF EMPLOYMENT SECURITY, | ) | No. 19 L 50307 |
| THE DIRECTOR OF EMPLOYMENT SECURITY, THE | ) | |
| BOARD OF REVIEW OF THE DEPARTMENT OF | ) | |
| EMPLOYMENT SECURITY, and KOVACH EYE | ) | Honorable |
| INSTITUTE, LTD., | ) | Michael F. Otto, |
| | ) | Judge, presiding |
| Defendants-Appellees. | ) | |

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**ORDER**

¶ 1     *Held*: Affirmed. Board decision that plaintiff was ineligible for unemployment benefits because she left employment voluntarily, without good cause attributable to her employer, was not against manifest weight of evidence or clearly erroneous.

¶ 2     Plaintiff Gloria Palacios appeals *pro se* from an order of the circuit court, affirming a

decision  by the Board of Review (Board) of the Illinois Department of Employment Security

(IDES) that found she was ineligible to receive unemployment benefits because she voluntarily left her employment with her employer, Kovach Eye Institute, Ltd. (Kovach). We affirm.

¶ 3    Palacios was employed by Kovach from April 2017 to April 2018. On April 10, 2018, Palacios sent Kovach an email giving notice that her last day of employment would be April 24, 2018. Before giving notice, Palacios, on March 25, 2018, filed a claim for unemployment benefits. Kovach protested the claim. An IDES claims adjudicator denied Palacios's claim, finding her ineligible for benefits because she voluntarily left employment.

¶ 4    Palacios appealed, and a telephone hearing was held before an administrative law judge (ALJ). Palacios was the only participant at the hearing. She testified that she had worked as a full-time receptionist and office manager for an eye doctor for 23 years before Kovach bought the practice. Before leaving her employment with Kovach, she was "supposed to" switch from a full-time to a part-time schedule but never made the transition.

¶ 5    Palacios stated that she had wanted to switch to part time, but also that she did not want to switch. She stated that Kovach was going to "cut my day in half, more than half." She acknowledged having sent an email to a supervisor, Lashanna Green, on April 6, 2018, stating that she had started working part-time on April 2, 2018, and requesting specific part-time hours. She explained at the hearing that she asked for those particular hours and could not work more than 25 hours per week because she needed to care for her sick husband. According to Palacios, Green initially said the requested hours were fine but then told Palacios, "[I]f I need you there, you have to stay there." Green also told Palacios that if she was unable to work on a specific Saturday, Palacios would have to find someone to cover for her.

¶ 6      Palacios acknowledged that she had applied for unemployment benefits on March 25, 2018, while she was still working full-time. When asked why, Palacios stated she had been going "back and forth" with Kovach about when she would be transitioning to a part-time schedule and that because of the "pay cut," she thought she could get some "help from unemployment."

¶ 7      Palacios testified that her workplace was hostile and negative, that she felt Kovach was pushing her away, that she was "very stressed out," and that she was not receiving proper training for tasks she was expected to perform. She acknowledged sending Kovach an email on April 10, 2018, resigning effective April 24, 2018. In the email, Palacios stated her pay had been cut 50%, and the workplace was a "stressful atmosphere." Palacios agreed that no doctor ever told her she needed to leave her employment. She stated she had spoken with someone in human resources about her workplace stress, but was told "it's gonna take time." Finally, she testified that the stress had caused her to experience redness and burning on her face.

¶ 8      The ALJ issued a written decision affirming the claims adjudicator's decision. The ALJ found that Palacios was working part-time when she left her employment on April 24, 2018. She had worked full-time for one eye doctor for over 20 years, until Kovach bought the practice, and did not get along with the new management. She requested part-time hours due to personal issues that required her attention. Shortly after making this request, she submitted her resignation with two weeks' notice. Palacios was stressed by the new management style, her lack of training, and her inability to get comfortable with the new owners, but she was not advised by a doctor to leave her employment and did not discuss her concerns with the human resources department before she resigned.

¶ 9       The ALJ concluded Palacios was ineligible for unemployment benefits under section 601(A) of the Illinois Unemployment Insurance Act (Act) (820 ILCS 405/601(A) (West 2018)) because she left work voluntarily without good cause attributable to the employer. Specifically, the ALJ stated, "In the present case, the evidence established that the claimant left her employment for personal reasons. Those reasons were compelling reasons, but personal, and not attributable with good cause to her employer."

¶ 10      Palacios appealed to the Board, which affirmed the ALJ's decision. The Board noted that Palacios had submitted a "written argument" as an accompaniment to her appeal. However, because Palacios had not certified in writing that she mailed or served the written argument upon the opposing party, as required by IDES regulation (56 Ill. Adm. Code 2720.315(b) (2018)), the Board indicated it had not considered it in connection with the appeal. The Board also found that the record adequately set forth the evidence so that no further evidentiary proceedings were necessary.

¶ 11      The Board found that Palacios was employed by Kovach from April 2017 to April 2018, when she voluntarily left her employment. She had sought and been granted part-time hours due to personal issues. Palacios then decided to leave employment at Kovach because she felt that she was stressed, Kovach was making work hard for her, Kovach did not want to help her with performing her job duties, she was overworked, and Kovach was "pushing her out." The Board further found Palacios was not instructed by a doctor that she needed to leave her employment. The Board concluded that the evidence showed Palacios was not subjected to such conditions as would have rendered the job unsuitable for her. As such, the Board found Palacios voluntarily left

employment with Kovach for personal reasons not attributable to the employer and was disqualified for benefits under section 601(A) of the Act.

¶ 12    Palacios thereafter filed a complaint for administrative review, and the circuit court affirmed. Palacios appeals *pro se*.

¶ 13    Initally, Palacios's appellate brief falls well short of the requirements of Illinois Supreme Court Rule 341 (eff. May 25, 2018), as it does not include, among other things, a statement of the nature of the case, reasoned contentions, or any citations to authority or the record. Her status as a self-represented litigant does not excuse her from compliance with Rule 341. *Gillard v. Northwestern Memorial Hospital*, 2019 IL App (1st) 182348, ¶ 45. Her failure to comply with Rule 341 would justify striking her brief and dismissing the appeal. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 77.

¶ 14    But we will consider the matter regardless, as we are able to understand the issues and are aided by a cogent and complete brief from the appellees. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001). It is clear enough that Palacios is challenging the determination that she is ineligible for unemployment benefits because she left work voluntarily, and we understand the reasons why she claims error. We thus move to the merits.

¶ 15    We first consider whether the Board abused its discretion when it declined to consider the written argument Palacios submitted as an accompaniment to her appeal. When hearing an appeal from an ALJ's decision, the Board may, in its discretion, accept additional evidence. 820 ILCS 405/803 (West 2018); *White v. Department of Employment Security*, 376 Ill. App. 3d 668, 672 (2007). But the Board may not consider "any written argument, response, or reply unless the submitting party has certified that it served a copy of the written argument on the opposing party."

56 Ill. Adm. Code 2720.315(b) (2018). Here, Palacios did not certify in writing that she mailed or served her written argument upon Kovach. As such, the Board did not abuse its discretion by refusing to consider the document, and we will not consider it in determining whether Palacios is ineligible for unemployment benefits because she left work voluntarily.

¶ 16    The Act provides economic relief to individuals who become involuntarily unemployed. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 396 (2001). A person may receive unemployment benefits under the Act if she meets the eligibility requirements and is not subject to any disqualifications or exemptions. *Matlock v. Illinois Department of Employment Security*, 2019 IL App (1st) 180645, ¶ 22. Under Section 601(A) of the Act, a person is ineligible for benefits if she voluntarily left work without good cause attributable to the employer. 820 ILCS 405/601(A) (West 2018). The employee carries the burden to prove she is eligible for unemployment benefits. *Matlock*, 2019 IL App (1st) 180645, ¶ 22.

¶ 17    In an appeal involving a claim for unemployment benefits, we review the final decision of the Board (*Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 22) and defer to the Board's factual findings unless they are against the manifest weight of the evidence. *Manning v. Department of Employment Security*, 365 Ill. App. 3d 553, 556 (2006). An administrative agency's findings of fact are against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). As a reviewing court, we may not judge the credibility of the witnesses, resolve conflicts in testimony, or reweigh the evidence. *White v. Department of Employment Security*, 376 Ill. App. 3d 668, 671 (2007). If any evidence exists in the record to support a factual finding, that

finding is not against the manifest weight of the evidence and must be sustained on review. *Matlock*, 2019 IL App (1st) 180645, ¶ 18.

¶ 18 Whether an employee left work voluntarily without good cause attributable to her employer is a mixed question of law and fact. *Childress v. Department of Employment Security*, 405 Ill. App. 3d 939, 942 (2010). The question is factual in that it we consider whether the facts support the Board's finding that a Palacios left work without good cause, and legal because terms such as discharge and voluntariness are legal concepts that require interpretation. *Matlock*, 2019 IL App (1st) 180645, ¶ 19. Our review of mixed questions of law and fact falls under the "clearly erroneous" standard. *Petrovic*, 2016 IL 118562, ¶ 21. An agency's decision may be found clearly erroneous "if, based on the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Id.*

¶ 19 Here, the Board made factual findings that (1) Palacios sought and was granted part-time hours; (2) she decided to resign from employment at Kovach because she felt that she was stressed, Kovach was making work hard for her, Kovach did not want to help her with performing her job duties, she was overworked, and Kovach was pushing her out; and (3) Palacios had not been told by a doctor that she needed to leave her employment. These findings are supported by Palacios's testimony at the telephone hearing. As there is evidence in the record that supports the Board's factual findings, they are not against the manifest weight of the evidence. See *Matlock*, 2019 IL App (1st) 180645, ¶ 18.

¶ 20 The record likewise supports the Board's determination that Palacios voluntarily left work without good cause attributable to Kovach and was thus ineligible for unemployment benefits under section 601(A) of the Act. Good cause for leaving employment exists when the

circumstances produce real and substantial pressure to compel a reasonable person under those circumstances to leave. *Childress*, 405 Ill. App. 3d at 943. Leaving employment is not attributable to the employer unless the employee's cause for leaving is within the employer's control. *Lojek v. Department of Employment Security*, 2013 IL App (1st) 120679, ¶ 36. Thus, when determining whether good cause exists, the focus is on the employer's conduct, not the employee's. *Matlock*, 2019 IL App (1st) 180645, ¶ 23. However, when possible, the employee must make a reasonable effort to resolve the cause of her leaving. *Lojek*, 2013 IL App (1st) 120679, ¶ 36.

¶ 21    "A substantial and unilateral change in employment may render employment unsuitable so that good cause for voluntary termination is established." *Acevedo v. Department of Employment Security*, 324 Ill. App. 3d 768, 772 (2001). But changes in pay, duties, and hours alone are generally insufficient to show good cause attributable to the employer for purposes of receiving benefits. See *id.* at 772-73. Nor does workplace stress typically constitute good cause, absent medical documentation that was submitted to the employer and not accommodated. See *Eggleston v. Illinois Department of Employment Security*, 199 Ill. App. 3d 743, 745-46 (1990).

¶ 22    Here, Kovach granted Palacios's request to work part-time. Shortly thereafter, Palacios tendered her resignation in an email, stating her pay had been cut 50% and the workplace was a "stressful atmosphere." At the telephone hearing, Palacios testified that the workplace was hostile and negative, that she felt Kovach was pushing her away, that she was "very stressed out," and that she was not receiving proper training for tasks she was expected to perform. But she also acknowledged that no doctor advised her to leave work. Based on this evidence, the Board concluded Palacios was not subjected to such conditions as would have rendered the job unsuitable for her.

¶ 23     Although Palacios stated in her resignation email that her pay had been cut and she was experiencing stress at work, we already noted above that these issues are not generally deemed sufficient to constitute good cause. See *id.* at 745-46; *Acevedo*, 324 Ill. App. 3d at 772. In addition, while Palacios referenced inadequate training at the telephone hearing, she did not testify to any specific, substantial changes in her job duties that required such training. See *Lojek*, 2013 IL App (1st) 120679, ¶ 38 (record reflected no evidence that changes in employment were substantial where employee did not explain how her job duties changed).

¶ 24     In sum, Palacios presented no evidence of a substantial and unilateral change in employment, initiated by Kovach, that rendered her employment unsuitable. We are not left with the definite and firm conviction that the Board erred. See *Petrovic*, 2016 IL 118562, ¶ 21. The Board's determination that Palacios voluntarily left work without good cause attributable to Kovach was not clearly erroneous. See *id.* We affirm the judgment of the circuit court.

¶ 25     Affirmed.